UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IRENE REYES DURAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:12-CV-00030-BG |
| | ) | ECF |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

**Statement of the Case**

Pursuant to 42 U.S.C. § 1383(c), Plaintiff Irene Reyes Duran seeks judicial review of a decision of the Commissioner of Social Security denying her application for supplemental security income. The United States District Judge transferred this case to the United States Magistrate Judge for further proceedings. Pursuant to the Order of transfer, the undersigned now files this Report and Recommendation.

On June 17, 2010, Duran and a vocational expert testified at a hearing before an administrative law judge (ALJ). Duran was represented by counsel at the hearing. The ALJ determined on September 1, 2010, that Duran was not disabled because she could perform jobs that existed in significant numbers in the national economy. The Appeals Council denied review on January 21, 2012. Therefore, the ALJ's decision is the Commissioner's final decision and properly before the court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (holding that the Commissioner's final decision "includes the Appeals Council's denial of [a

1

claimant's] request for review").

## Standard of Review

A plaintiff is disabled and may be entitled to supplemental security income if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3) (2012).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); 20 C.F.R. § 416.920(a)(4) (2012). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's residual functional capacity (RFC), defined as "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 416.920(a)(4), 416.945(a)(1).

The court must affirm the Commissioner's decision unless it finds that (1) the ALJ "applied an incorrect legal standard" or (2) the ALJ's determination is "not supported by substantial evidence." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). "Substantial evidence is more than a scintilla but less than a preponderance and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

**Factual Background**

Duran claims that she became disabled on January 1, 2003, at age 37 due to back pain from a car accident, Bell's palsy, high blood pressure, high cholesterol, low heart rate, diabetes, and "possibly sleep apnea." (Tr. 96, 101.) She has a seventh grade education, is 4 feet 11 inches tall, and weighs approximately 225 pounds. (Tr. 26–27.)

Duran received medical care from various physicians at a family practice clinic through at least March 2010. (Tr. 375–97, 504–06, 881–929, 933–42, 948–951, 954–66, 975–79.) In addition, she regularly received epidural steroid injections that provided partial pain relief for months at a time through at least August 2009. (Tr. 320, 337, 346, 354, 368, 441, 759–60, 762–63, 793, 798, 805, 812, 817, 823, 962.) She reported that she regularly babysat her grandchildren, took care of her pets, watched television, read newspapers, listened to the radio, cleaned her house, did her laundry, washed dishes, cooked, drove, shopped for groceries, attended church weekly, and attended her grandson's baseball games. (Tr. 31–32, 121–24, 140–44, 765, 767, 1035.)

**Discussion**

I.  Substantial evidence supports the ALJ's step 3 findings.

A claimant is found disabled at step 3 if she has an impairment that meets or equals an impairment listed in Appendix 1 of the regulations governing Social Security claims (hereinafter "listing"). 20 C.F.R. § 416.920(a)(4)(iii). To meet a listing, an impairment "must meet *all* of the

3

specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (italics in original). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* To equal a listing, a claimant "must provide medical findings that support each of the criteria for the equivalent impairment determination." *Selders*, 914 F.2d at 619.

In this case, the ALJ found that Duran did not have an impairment or combination of impairments that met or medically equaled a listing. (Tr. 12.) He also found that degenerative disc disease of the lumbar spine was one of Duran's severe impairments. *Id.* Duran argues that this impairment meets or equals Listing 1.04(A), which describes certain spinal disorders. (Pl.'s Br. 22.) To meet or equal that listing, a claimant must establish evidence of "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A).

Substantial evidence supports the conclusion that Duran's degenerative disc disease is not accompanied by the nerve root compression described in Listing 1.04(A). As noted by the ALJ, a radiologist reviewed an MRI of Duran's lumbar spine in April 2008 and noted no evidence of neural compression. (Tr. 15, 333.) The radiologist also stated that Duran had mild facet spurs and a small synovial cyst "well away from any neural elements[.]" (Tr. 333.) A state agency physician who reviewed Duran's evidence of record in June 2009 also found that the April 2008 images showed "no neural compression evidence." (Tr. 667.)

Substantial evidence also supports the conclusion that Duran did not experience the limitation of motion, motor loss, muscle weakness, sensory loss, or reflex loss described in Listing 1.04(A). In January 2005, a physician who examined Duran for complaints of back pain observed that she exhibited normal reflexes bilaterally, full range of motion in her spine, and a negative straight-leg raising test. (Tr. 905.); *Stedman's Medical Dictionary* App. 29 (28th ed. 2006) (explaining that the notation "2+" indicates "average or normal" reflexes). In November of that year, a physician found intact sensation in Duran's extremities after she complained of pain in her lower back, knee, and ankle. (Tr. 908–09.) The following month, Duran reported to her physician that her back pain had stabilized and caused her no numbness or weakness. (Tr. 910.) The physician found that she had normal strength and sensation in all extremities at that appointment. (Tr. 911.)

In September 2006, a physician found that Duran had no focal weakness, no gait problems, and intact sensation in her extremities after she complained of left knee pain. (Tr. 896–98.) In November of that year, Duran sought treatment for her lumbar area, which she claimed she had aggravated by lifting her grandchild. (Tr. 900.) Upon examination, the treating physician observed that she exhibited normal rotation and lateral bending in her back but painful flexion and extension. *Id.* The physician also found that she had normal leg reflexes, grossly intact leg sensation, and a negative straight-leg raising test. *Id.*

In January 2007, a physician found that Duran exhibited good range of motion in her back, 5/5 strength and motor function in her extremities, and normal reflexes and gait. (Tr. 883.) In September of that year, another physician observed that she had normal range of motion after she presented with complaints of back and leg pain. (Tr. 504–06.)

At an appointment in April 2008, Duran exhibited normal range of motion and negative straight-leg raising tests bilaterally. (Tr. 394.) The following month, pain management specialist Rafael Justiz, M.D., examined Duran for complaints of low back pain. (Tr. 368–69.) According to Dr. Justiz, Duran denied having lower extremity weakness and exhibited normal sensation and reflexes and 5/5 strength in her bilateral upper and lower extremities. *Id.* Unlike Duran's previous physicians, Dr. Justiz found that Duran had a positive straight-leg raising test on the left. (Tr. 369.) He also noted tenderness in multiple areas. *Id.*

In September 2008 and February 2009, Duran sought medical treatment at her regular family practice clinic for intermittent abdominal pain, high blood pressure, and medication refills. (Tr. 378, 384.) At those appointments, she denied having numbness or back, joint, or muscle pain. (Tr. 378, 384.) She also exhibited no focal neurological defects and normal range of motion, strength, gait, and motor function. (Tr. 379, 386.) Duran presented at the clinic with back pain again in August 2009. (Tr. 962.) Although her physician noted positive straight-leg raising tests, he observed that she exhibited normal sensory and motor function at that appointment. (Tr. 964.)

In January 2010, a neurologist examined Duran and found that she exhibited normal reflexes, bulk, and muscle tone in all four extremities; intact sensory function and coordination; 5/5 muscle strength; and normal gait. (Tr. 945.) At an ophthalmology appointment the following month, Duran denied having joint pain, back pain, numbness, or weakness. (Tr. 981.)

In view of the foregoing substantial evidence, the ALJ's conclusion that Duran's impairments did not meet or equal a listing, including Listing 1.04(A), must be affirmed. *See Selders*, 914 F.2d at 619–20 (affirming ALJ's conclusion that claimant's impairment did not equal any impairment listed in the regulations).

6

Duran argues that "involving a Medical Expert at the hearing . . . would have assisted in the equivalency evaluation" with respect to Listing 1.04. (Pl.'s Br. 25.) An ALJ may "ask for and consider opinions from medical experts" regarding equivalency to a listing. 20 C.F.R. § 416.927(e)(2)(iii). The "use and consideration of medical expert testimony is solely within the discretion of the ALJ." *Dominguez v. Astrue*, No. 07-51343, 2008 WL 2787483, at **4 (5th Cir. July 18, 2008) (per curiam).

The undersigned does not decide whether the ALJ abused his discretion in this regard because any such error would be harmless. Procedural flaws at step 3 do not warrant reversal "as long as the substantial rights of a party have not been affected." *Audler*, 501 F.3d at 448 (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)) (internal quotation marks omitted). Duran "has the burden to show that prejudice resulted from an error." *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012).

In *Audler*, the Court of Appeals for the Fifth Circuit held that an ALJ's procedural error at step 3 affected a claimant's substantial rights because the claimant "would appear to have met her burden of demonstrating that she meets the Listing requirements for § 1.04A." *Id.* at 449. In that case, the claimant submitted medical records from her treating orthopedic surgeon indicating that she "had most of the symptoms of nerve root compression (including motor loss, limitation of motion of the spine, and sensory loss)[.]" *Id.*

Unlike the claimant in *Audler*, Duran's medical records do not indicate that she "had most of the symptoms of nerve root compression[.]" *Id.* Rather, the previously described substantial evidence that supports the ALJ's step 3 conclusion reflects the opposite. In view of the substantial evidence in this case, Duran has not shown prejudice sufficient to warrant reversal. *See Morris v.*

7

*Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam) (upholding ALJ's non-disability finding due to lack of prejudice because alleged impropriety did not "render the ALJ's determination unsupported by substantial evidence").

II.     The ALJ considered the combined effect of Duran's impairments.

Duran argues that the ALJ did not consider the combined effect of her impairments. (Pl.'s Br. 25–26.) It is true that an ALJ "must analyze both the disabling effect of each of the claimant's ailments and the combined effect of all of these impairments." *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987) (quoting *Dellolio v. Heckler*, 705 F.2d 123, 128 (5th Cir.1983)) (internal quotation marks omitted).

In this case, the ALJ explicitly recognized that he had to consider Duran's combination of impairments in his review of applicable law. (Tr. 10–11.) He also recognized that he was required to consider all of Duran's impairments, "including impairments that are not severe" when determining her RFC. (Tr. 11.) Following these requirements, the ALJ included both exertional and non-exertional limitations in Duran's RFC. (Tr. 13.) He expressly found that Duran did "not have an impairment or combination of impairments" that met or medically equaled a listing at step 3. (Tr. 12.) He also stated that he considered Duran's "complete medical history," "all of the evidence," "all symptoms," "the entire case record," and the "medical records as a whole." (Tr. 10, 13–15.) Accordingly, Duran's argument does not warrant reversal. *See Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (rejecting claimant's conclusory argument that ALJ failed to consider the combined effects of his impairments because the ALJ expressly referenced the claimant's combination of impairments at step 3, stated that he considered "the evidence as a whole," and used other similar language in his opinion).

III.  Duran's arguments regarding obesity do not warrant reversal.

Finally, Duran argues that the ALJ should have found that her obesity was a severe impairment and that his failure to do so violated Social Security Ruling 02-1p. (Pl.'s Br. 26–29.) Social Security Ruling 02-1p states, "As with any other medical condition, we will find that obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities."  SSR 02-1p, 2000 WL 628049, at *4 (Sept. 12, 2002).

Duran's argument does not require remand.  In *Adams v. Bowen*, 833 F.2d 509 (5th Cir. 1987), the Court of Appeals for the Fifth Circuit considered a claimant's argument that "the ALJ erred in acknowledging her significant impairment while failing to find it 'severe.'" *Id.* at 512.  The court concluded that this argument did not require remand because that case "did not depend upon a conclusion of the 'non-severity' of [the claimant's] condition[.]" *Id.*  Rather, the ALJ in that case assessed the claimant's RFC and found her not disabled at step 4 because she could perform her past sedentary work. *Id.*

Similarly, in *Herrera v. Comm'r of Soc. Sec.*, No. 10-50576, 2010 WL 5421297 (5th Cir. Dec. 30, 2010) (per curiam), a claimant argued that remand was required because the ALJ did not explicitly determine the severity of two of his impairments, namely, his anxiety and learning disability. *Id.* at **3.  The Court of Appeals for the Fifth Circuit rejected the argument because that case "did not turn on a finding that [the claimant's] impairments were not severe at step 2; rather, the ALJ concluded that [the claimant] was not disabled because, despite his severe impairments, he retained the residual functional capacity to do other work." *Id.*  The court also noted that any mental functioning impairment reflected in the medical records was incorporated into the ALJ's RFC

9

determination. *Id.* at \*\*3 n.2.

As in *Adams* and *Herrera*, the ALJ in this case acknowledged Duran's obesity but did not explicitly determine its severity. (Tr. 14.) Similarly, the ALJ's decision in this case did not depend on the non-severity of Duran's impairments.  Instead, the ALJ assessed Duran's RFC and determined that she was not disabled at step 5 because she could perform jobs that existed in significant numbers in the national economy. (Tr. 17.)  Finally, like in *Herrera*, the ALJ's RFC determination in this case accommodates any functional limitations that may be caused by Duran's obesity: the ALJ limited Duran to light work that required "no climbing, crawling, kneeling or squatting" and no more than occasional stooping or crouching. (Tr. 13.)  He also recognized her "need to sit or stand, at her option, while in the performance of job duties[.]" *Id.*  Duran does not dispute the ALJ's RFC determination.  As in *Adams* and *Herrera*, her arguments do not provide a basis for reversal.

## **Conclusion**

For the foregoing reasons, the undersigned recommends that the United States District Court **AFFIRM** the Commissioner's decision and **DISMISS** Duran's Complaint with prejudice.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing

before the magistrate judge is not specific. Failure to timely file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

Dated:   January 9, 2013.

_____
NANCY M. KOENIG
United States Magistrate Judge